UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #
DATE FILED: 11/17/2016

---

CARLOS RONQUILLO,

                Plaintiff,

- against -

THE NEW YORK BOTANICAL GARDEN, and
E.W. HOWELL CO., LLC,

                Defendants.

**OPINION AND ORDER**

13 Civ. 9115 (ER)

---

Ramos, D.J.:

      Plaintiff Carlos Ronquillo brings this action against Defendants The New York Botanical Garden ("NYBG") and E.W. Howell Co., LLC ("Howell") seeking to recover damages for injuries sustained after falling from a ladder while performing asbestos abatement work. After filing the instant action in state court alleging violations of New York Labor Law, Defendants removed the action to this Court based on diversity jurisdiction. Before the Court is Plaintiff's motion for partial summary judgment pursuant to Federal Rule of Civil Procedure 56.

      For the reasons stated below, Plaintiff's motion for partial summary judgment on the issue of liability is GRANTED.

## I. Factual Background[1]

Plaintiff worked for Abatement Unlimited, Inc. ("Abatement"), as a licensed asbestos handler. Plaintiff's Rule 56.1 Statement ("Pl. 56.1 Stmt") (Doc. 66) ¶ 8. He was also a member of the Union, Local 78 Asbestos Workers. *Id.* at ¶ 9.

In or around 2012, the NYBG undertook efforts to install a new heating, ventilation, and air conditioning system in the Mertz Library building (the "Mertz project"). Plaintiff's Memorandum of Law in Support of Plaintiff's Motion for Partial Summary Judgment ("Pl. Memo") (Doc. 67), Ex. 11. Bill Fitzgerald, the NYBG project manager, was in charge of the logistics of the project, including preparing information for contractors and monitoring the progress of the project. Pl. 56.1 Stmt. ¶ 18. In January 2013, the NYBG hired Howell as the general contractor, responsible for performing, arranging, and supervising the work required to complete the Mertz project. Michael Delia, Howell's job site superintendent, oversaw the day-to-day fieldwork, *id.* at ¶ 19, and reported to Jehan Joonas, Howell's project manager. *Id.* at ¶ 32. As part of the renovation efforts, Howell subcontracted Abatement to remove asbestos in the Mertz Library. *Id.* at ¶ 43.

Howell, as the general contractor, was responsible for site safety for the Mertz project.[2] *Id.* at ¶ 33. Before commencing work on the Mertz project, Howell employees and employees of the subcontractors attended a ten-minute safety orientation conducted by Delia. *Id.* at ¶ 34. Delia also provided printouts to the subcontractors for use in their own safety meetings. *Id.*

---

[1] The following facts are drawn from Plaintiff's Rule 56.1 Statement of Material Facts (Doc. 66), and Defendants' Rule 56.1 Response to Plaintiff's Statement of Material Facts (Doc. 69), and the parties' supporting submissions.

[2] The contract between the NYBG and Howell specifically states that Howell was to provide, among other things, "adequate on-site personnel for daily supervision of construction, safety and security conditions." Pl. Memo Ex. 11.

Plaintiff attended a safety orientation meeting and signed all of the requisite forms.[3]  *Id.* at ¶ 49.  Though Delia supervised the work Abatement was performing, once the containment area was erected, neither he nor NYBG employees were given access to the worksite.  *Id.* at ¶ 39.  Delia did not recall having any conversations with Abatement about the possible use of ladders to perform their abatement work.  *Id.* at ¶ 44.

Abatement was assigned to remove asbestos from the first floor of the Mertz Library.  The first floor housed a mailroom, cold storage room, and offices, and had a hallway that spanned approximately forty feet long.  *Id.* at ¶ 41.  In preparation for the asbestos removal, the walls and floor of the first floor were covered in plastic.  *Id.* at ¶ 57.  The specific areas requiring asbestos removal were identified by Howell, though Howell did not provide instructions on the preferred method of removal nor did it provide safety devices to perform the required work.  *Id.* at ¶¶ 56, 57.

Plaintiff claims he was taught to remove asbestos by first chipping away at the designated area and then hosing the area down to control the asbestos dust.  *Id.* at ¶ 62.  By moistening the asbestos dust, it would clump and fall on the plastic allowing for easy cleanup.  *Id.* at ¶¶ 59, 62.  To perform this task, Abatement used the ladders that were left in the work area after the plastic was placed on the walls, and a machine with a hose which was set up for their use.  *Id.* at ¶ 55.  No other alternative means to reach the designated areas were provided:  there were no safety lines set up in the hallway, nor were scaffolds erected in the area.  *Id.* at ¶ 56.  The handlers wore a protective suit, hardhat, respirator, goggles, gloves, and boots. *Id.* at ¶ 59.

---

[3] By signing the form, Plaintiff agreed that he "understood the safety rules specific to [his] company and trade as well as those specific to this project."  Pl. Memo, Ex. 9.

German Torres, the foreman for Abatement, assigned Plaintiff and his coworker Johnny Alvarado to work at the Mertz Library for the 6:00 PM to 2:30 AM shift. *Id.* at ¶¶ 11, 55. He also instructed Plaintiff and Alvarado to each use a ladder for the asbestos removal. Though no assistants or extra staff were assigned to secure the ladders, Defendants claim that Torres told them to "support each other's ladders when necessary." Defendants' Response to Plaintiff's Statement of Material Facts (Doc. 69, Ex. 4) ¶ 46.

Approximately one-week into his job on the Mertz project, on April 23, 2013, Plaintiff fell from a ladder suffering injuries to his back and arms. Plaintiff alleges that he was standing on a twelve-foot A-frame ladder removing asbestos from an area toward the front of the hallway. *Id.* at ¶ 54. Alvarado, the only other handler at the site, was on an extension ladder toward the rear of the hallway. *Id.* Plaintiff claims that he had properly opened the ladder, locked it, and placed its feet flat on the floor before using the ladder. *Id.* at ¶ 61. At around 12:15 AM – six hours into his shift – Plaintiff claims that as he descended the ladder, the ladder slipped on the wet plastic surface and moved, causing him to fall approximately nine feet and land on the floor. *Id.* at ¶ 64.

Plaintiff alleges that after the accident, Alvarado helped him to the decontamination chamber. *Id.* at ¶ 66. Once Plaintiff made it outside of the containment area, both Torres and Liliam Campozano, the Union shop steward, interviewed him and prepared an accident report. *Id.* Campozano recorded Plaintiff's account in Spanish, writing that Plaintiff was coming down the ladder and fell hitting his back and arms after the ladder slipped.[4] Liliam Campozano

---

[4] Specifically, Campozano wrote "Cuando estaba bajando de la escalara, esta se resbalo y [Plaintiff] se cayo golpeandose la espalad y los brazos, junto a el estubo trabajando [Alvarado]. El compañero decidio seguir trabajando." This statement was translated by certified Spanish interpreter to state "As he was coming down the

Affidavit ("Campozano Affidavit") (Doc. 67, Ex. 6).  Torres, who spoke Spanish but recorded the account in English, wrote "him step down to water and hurts his back."[5]  German Torres Affidavit ("Torres Affidavit") (Doc. 69, Ex. 2).  Plaintiff refused an ambulance and remained at the work site.  Campozano Affidavit ¶ 3.

On September 17, 2013, Anne Pucci, the Office Administrator for Abatement, completed a workers compensation form for Plaintiff.  In response to the question asking for the details of the accident, Pucci wrote "[Plaintiff] was coming down off a ladder, the ladder slipped and he fell landing on his back."  She also attached, among other things, Campozano's accident report to the form.  On November 5, 2013, Delia completed an incident form, in which he states that he was first alerted to Plaintiff's accident via email from Joonas.  To the form, Delia attached a letter from Abatement dated October 31, 2013 – signed by Pucci – stating that "[Plaintiff] was descending from a ladder, slipped and fell landing on his back . . . [Plaintiff] returned to work the next day and has continued to working for us since that date."

As a result of the fall, Plaintiff suffered injuries to his back and underwent cervical fusion surgery on November 14, 2014.

---

ladder, it slipped and [Plaintiff] fell down hitting his back and arms.  [Alvarado] was working next to him.  The worker decided to continue working."  Campozano affirmed the accuracy of the translation.  Pl. Memo Ex. 6.

[5] Torres also subsequently added additional information to the report, including that he asked Plaintiff if he needed medical attention after the accident and that Plaintiff stated that he did not.  Torres also wrote that the next day Plaintiff informed him that he had gone to his doctor and that the doctor told him everything was fine.

Torres actual record states, "I the sup. saw his back was Red I ask him to call ambulette him say I ask to go to hospital. [he] say no and [he] say Im fine and him come back to work, next day him come back and told me [he] go to doctor and his doctors tell him everything its fine."  Torres Affidavit.

Though Torres submitted an affidavit affirming that the report accurately reflected what Plaintiff told him about the accident, Torres did not further explain his report.

## II. Procedural Background

On November 5, 2013, Plaintiff commenced this action in the Bronx County Supreme Court. On December 26, 2013, Defendants removed the action to this Court and filed a Notice of Removal. (Doc. 1) Defendants filed an Answer on January 24, 2014. (Doc. 3) On March 24, 2016, the Court granted Plaintiff leave to file a motion for partial summary judgment on the issue of liability (Doc. 47), which Plaintiff filed on June 24, 2016 (Doc. 51).

## III. Legal Standard

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact." Fed. R. Civ. P. 56(a). "An issue of fact is 'genuine' if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Senno v. Elmsford Union Free Sch. Dist.*, 812 F. Supp. 2d 454, 467 (S.D.N.Y. 2011) (citing *SCR Joint Venture L.P. v. Warshawsky*, 559 F.3d 133, 137 (2d Cir. 2009)). A fact is "material" if it might affect the outcome of the litigation under the governing law. *Id.* In opposing a motion for summary judgment, the non-moving party may not rely on unsupported assertions, conjecture, or surmise. *Goenaga v. March of Dimes Birth Defects Found.*, 51 F.3d 14, 18 (2d Cir. 1995). The non-moving party must do more than show that there is "some metaphysical doubt as to the material facts." *McClellan v. Smith*, 439 F.3d 137, 144 (2d Cir. 2006) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)) (internal quotation mark omitted). To defeat a motion for summary judgment, "the non-moving party must set forth significant, probative evidence on which a reasonable fact-finder could decide in its favor." *Senno*, 812 F. Supp. 2d at 467–68 (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256–57 (1986)).

**IV. <u>Discussion</u>**

The parties do not dispute that the NYBG owned the Mertz Library building, Howell was the general contractor for the Mertz project, and that Plaintiff's asbestos abatement work constitutes an alteration of a building or structure as contemplated by New York Labor Law. Thus, the remaining question at issue is whether Defendants are strictly liable for the injuries Plaintiff sustained as a result of the fall. New York Labor Law § 240(1) provides that,

> All contractors and owners and their agents . . . in the erection, demolition, repairing, altering, painting, cleaning or pointing of a building or structure shall furnish or erect, or cause to be furnished or erected for the performance of such labor, scaffolding, hoists, stays, ladders, slings, hangers, blocks, pulleys, braces, irons, ropes, and other devices which shall be so constructed, placed and operated as to give proper protection to a person so employed.

N.Y. Lab. Law § 240(1) (McKinney). This statutory duty is non-delegable and an owner or contractor is liable for a violation even if the job was performed by an independent contractor over which it exercised no supervision or control. *See Ross v. Curtis-Palmer Hydro-Elec. Co.*, 81 N.Y.2d 494, 500 (1993).

Importantly, "the mere fact that a plaintiff fell from a ladder does not, in and of itself, establish that proper protection was not provided." *Costello v. Hapco Realty, Inc.*, 305 A.D.2d 445, 447 (2003). To prevail, Plaintiff must show that the ladder was defective or inadequately secured and that the defect, or the failure to secure the ladder, was a substantial factor causing the plaintiff's injuries. *See Blake v. Neighborhood Hous. Servs. of N.Y. City, Inc.*, 1 N.Y.3d 280, 287 (2003) (noting that plaintiff must establish that defendants violated the statute and that the violation was a proximate cause of his injuries to prevail on Section 240 claim); *see also Morin v. Machnick Builders, Ltd.*, 4 A.D.3d 668, 670 (3d Dep't 2004) (holding that plaintiff establishes a statutory violation

7

as a matter of law, where he shows that the "ladder collapses, slips, or otherwise fails to perform its function of supporting the worker and his materials") (internal citations omitted).  Where a plaintiff falls off of a ladder because he lost his balance, and there is no evidence that the ladder was defective or inadequate, liability pursuant to Labor Law § 240(1) does not attach.  *Hugo v. Sarantakos*, 108 A.D.3d 744, 744 (2d Dep't 2013).  At summary judgment, once the plaintiff makes a *prima facie* showing, the burden shifts to the defendant to show that there was no statutory violation and that plaintiff's own conduct or omission was the sole cause of the accident.  *Morin*, 4 A.D.3d at 670.

Here, Plaintiff was instructed to use a ladder, but not given any ropes or other safety devices to secure the ladder and prevent it from slipping on the water that collected on the plastic from the asbestos removal process.  Plaintiff was also not harnessed to prevent him from falling to the ground if the ladder were to slip.  Because the ladder was not properly secured, as Plaintiff descended, the ladder slipped on the wet plastic on the ground, causing him to fall and injure his back and arms.  Accordingly, Plaintiff has established a *prima facie* case that Defendants violated Labor Law § 240(1) and that the violation was the proximate cause of his injury.  *See Perez v. NYC P'ship Hous. Dev. Fund Co.*, 55 A.D.3d 419, 420 (1st Dep't 2008) (holding that plaintiff was not required to show that the ladder on which he was standing was defective, rather it was "sufficient for purposes of liability under section 240(1) that adequate safety devices to prevent the ladder from slipping or protecting plaintiff from falling were absent").

In opposition, Defendants argue that inconsistent accounts of Plaintiff's accident create a triable issue of fact.  Defendants' Memorandum of Law in Opposition ("Defs. Opp.") (Doc. 69), at 6.  Specifically, Defendants claim that neither Torres's report nor

Abatement's October 31, 2013 letter to Howell (signed by Pucci) include any mention of a ladder slipping or falling.  *Id.*  Instead, they claim that Plaintiff merely slipped off the ladder and fell.  Since Plaintiff's accident was unwitnessed, Defendants' contend that he was required to provide objective independent testimony corroborating the ladder's fall in order for summary judgment to be granted.  They add that Alvarado – the only other witness – did not appear for his deposition nor did he provide an affidavit of his account.  Defendants also claim that Torres instructed Plaintiff and Alvarado to support each other's ladders when necessary.  *Id.* at 7.

The Court finds that Defendants have not shown that a triable issue of fact exists.  As an initial matter, the fact that Plaintiff's accident "was unwitnessed does not preclude summary judgment."  *Niles v. Shue Roofing Co., Inc.*, 219 A.D.2d 785, 785 (3d Dep't 1995).  This is especially true where – as is the case here – Plaintiff's account is not contradicted.  *Abramo v. Pepsi-Cola Buffalo Bottling Co.*, 224 A.D.2d 980, 981 (3d Dep't 1996) (noting that summary judgment is appropriate if plaintiff's account of the accident, even if unwitnessed, is uncontroverted or if defendant is unable to show, other than by speculation without factual support, that a bona fide issue exists).  Plaintiff provides Campozano's report – made shortly after the accident – and an affidavit in which he avers the same course of events:  the ladder slipped causing Plaintiff to fall and suffer injuries.  Defendants' attempt to discredit Plaintiff's account by pointing to Torres's description is unpersuasive.  It is clear that Torres's description does not reflect a complete record of Plaintiff's account.  In fact, Torres does not even include one of the most important aspects of Plaintiff's account:  that he fell off of a *ladder*.  Moreover,

9

Torres's record does not actually contradict Plaintiff's story; it merely states that Plaintiff fell down onto the wet plastic – a fact uncontested by Defendants.

Defendants' reliance on the October 31, 2014 letter signed by Pucci is also misplaced. Pucci has no firsthand knowledge of the accident and relied on the information provided by Campozano and Torres. In fact, in a workers compensation form dated September 17, 2014 and signed by Pucci it states that the ladder slipped and Plaintiff fell and also attaches Campozano's report. Thus, the letter to Howell – sent one month later – is insufficient to raise an issue of fact.

Lastly, Defendants cannot rely on a "recalcitrant worker" defense. To escape liability under Section 240(1), Defendants must show that the injured worker refused to use the safety devices available, visible, and in place at the worksite. *See Williams v. Town of Pittstown*, 100 A.D.3d 1250, 1252 (3d Dep't 2012). Torres's instruction to have Plaintiff and Alvarado support each other (when necessary) when both were responsible for completing asbestos removal at different ends of a forty feet hallway does not constitute refusal of an available and visible safety device. *See Tennant v. Curcio*, 237 A.D.2d 733, 734-35 (3d Dep't 1997) ("employer's general instruction that the workers not utilize the ladder without first securing it to the building is insufficient to create a factual issue"); *see also Gordon v. Eastern Ry. Supply, Inc.*, 82 N.Y.2d 555, 563 (1993) (noting that it is well settled that an instruction by an employer or owner to avoid unsafe practices is not a safety device in that plaintiff's failure to comply is not equivalent to refusing to use available, safe, and appropriate equipment); *Szuba v. Marc Equity Properties, Inc.*, 19 A.D.3d 1176, 1177 (4th Dep't 2005) ("[The recalcitrant worker] defense has no application where safety devices were merely present somewhere at the

work site."). Moreover, even accepting Defendants' claim, Plaintiff's failure to ask Alvarado for assistance (the coworker who was also on a ladder), at most demonstrates contributory or comparative negligence; defenses unavailable under the statute. *See Kouro v, State of New York*, 288 A.D.2d 566, 567-68 (2001).

Accordingly, because Plaintiff has established a *prima facie* case and Defendants are unable to raise an issue of fact, Plaintiff is entitled to summary judgment on the issue of liability.

## V. Conclusion

For the reasons set forth above, Plaintiff's motion for partial summary judgment is GRANTED. The parties are directed to appear before the Court for a status conference on **December 14, 2016 at 12:30 PM**. The Clerk of Court is respectfully directed to terminate the motions, Docs. 51, 65.

It is SO ORDERED.

Dated:   November 16, 2016
         New York, New York

                                                        _____
                                                        Edgardo Ramos, U.S.D.J.